## THE BUFFALO.

### THE CHAUTAUQUA.

(District Court, E. D. New York. March 9, 1912.)

SALVAGE (§ 31*)—NATURE OF SERVICE—AMOUNT OF COMPENSATION.

    A salvage award of $50 made to one of two licensed boatmen, who volunteered to take a tug owned by a railroad company, from which the master was absent, and move a ferryboat, also owned by the same company, and laid up for Sunday, from the vicinity of a fire in an oil building in the railroad yards alongside a slip, from which the burning oil had spread over the water and a pier, creating more or less danger to shipping in the nearby slips.

    [Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 75–77; Dec. Dig. § 31.*

    Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit by Louis Hazzard and another against the steam tug Buffalo and steam ferryboat Chautauqua; Erie Railroad Company, claimant. Decree for libelants.

Foley & Martin, for libelant Hazzard.
Herbert Green, for claimants.

CHATFIELD, District Judge. The libelant Hazzard, who was a licensed and experienced boatman, with one Breen, also a licensed master, volunteered to use the tug Buffalo, which had been put in readiness by one Raymond, an engineer of the Erie Railroad, to remove the ferryboat Chautauqua from the possible danger zone, at a fire occurring Sunday noon, in the Erie Railroad yards at Weehawken, on February 5, 1911.

The testimony shows that the fire was in a one-story building filled with barrels of oil. Some of the oil at first ran down into the slip in front of the house, where the barrels were stored, and burned there. The fire was of considerable extent; the blaze and smoke being carried out into the river. A number of barges and lighters, three other tugs of the Erie Railroad, and some boats of the Jersey Central and the Delaware, Lackawanna & Western were lying in the slip where the Chautauqua was moored, and were taken out of the slip by the Delaware, Lackawanna & Western and the Jersey Central tugs after the ferryboat had been taken out. The ferryboat was in commission, laid up for Sunday, and having her boiler tubes cleaned. Her value is in excess of $50,000. Nothing was burned except the house containing the oil and the pier immediately next to it, with some slight damage to a boat moored at the other side of that pier. The exact position of the Chautauqua was two slips to the south, over 200 feet away.

The case presents unusual features, in that the salvage service was rendered by a boat belonging to the railroad company which owned the Chautauqua. This tug was used by the volunteers, with the consent of Raymond, who evidently anticipated that she might be needed for the service. The captain of the Buffalo did not return until the work had been accomplished. The element of risk to the property of the salvor is not present. The element of danger to life, aside from the remote possibility of explosion, is not shown. The removal of the boats was evidently a matter of good judgment, although finally the action of the fireboats and the lines of hose from the various tugs succeeded in confining the fire to its original situation. In other words, if the ferryboat and the tugs had remained where they were moored, and nothing had occurred other than did occur after they were removed, they probably would have escaped injury. Nevertheless, the action on the part of the Buffalo and of her crew was such a service as would be recognized as a salvage service by an independent tug.

I should consider that, if a full crew had been on board, for services of an hour or an hour and a half in duration, not more than $150 would be allowed to the crew for such a matter. There being but two men concerned, it is necessary to consider what each man did. It is evident that the libelant Hazzard joined in the responsibility, advised the action which has been characterized as good judgment at the time, and was entitled equally with Breen to whatever could be allowed for the services. It also appears that the engineer Raymond had been prompt and efficient in getting his boat ready, and that, if he were in a position where he could make a legal claim against the railroad, his

claim should be recognized. If promotion can be claimed for salvage work, he seems to have earned consideration.

The salvage service has to be confined to the ferryboat, even though the tug also was moved, for the employment of somebody by Raymond to help run the tugboat would be nothing more than ordinary service. Hence no award of salvage with reference to the tugboat alone can enter in the case; but compensation for services to the tugboat should be considered in estimating the award for what was done on and for both boats.

Under the circumstances, it seems that an award of $100 for the services rendered by Breen and Hazzard would be fair; and, as Hazzard alone is prosecuting his claim, he may have a salvage award of $50 against the two vessels.